**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA :**

|  |  |  |
|---|---|---|
| **v.** | : | **21-CR-99 (PLF)** |

**VAUGHN GORDON** : 

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING[1]

Mr. Gordon comes before this Court for sentencing having pleaded guilty to one count of parading, demonstrating or picketing in the United States Capital on January 6, 2021. He was arrested on January 14, 2021, just over a week after the events that transpired and has been on pretrial release since his arrest. He has been fully compliant with his release conditions for over two years. He acknowledged his responsibility immediately after January 6 and has steadfastly remained prepared to accept the consequences of his actions. He acknowledges the seriousness of his conduct and deeply regrets having gone to the U.S. Capital that day. However, as the Probation Office has noted in its recommendation, Mr. Vaughn's culpability is minimal in contrast with those who vandalized or stole government property or assaulted or threatened law enforcement.  He requests that the Court adopt the recommendation of the Probation Office and impose a probationary sentence.

**Background and Characteristics of Mr. Vaughn Gordon**

---

[1] Counsel apologizes for filing this memo 12 hours after it was due. A confluence of events including a Friday night hockey game and the shutdown of the office electricity from Friday night until mid-morning Saturday caused the delay.

Mr. Gordon is a 56 year old single man with no children who resides in Lafayette, Louisiana with his sister and her family. He works restoring classic cars. While he is generally in good health, he does have hypertension and arthritis and suffers from back and neck pain after recently being struck by a vehicle while riding his bicycle in Lafayette. While being treated for injuries suffered in that accident, he was diagnosed with herniated disks on his spine and a cyst on his kidney and is undergoing treatment.

Mr. Gordon is not a part of any organization or group that espouses violence or sought to overturn the election results. He has no criminal history and has led a law-abiding simple, but interesting life. Mr. Gordon attended a variety of higher education institutions where he pursued interests in music and automotive technology. He is an accomplished musician and was a prominent extra in the movie *Secretariat*.

**Circumstances of the Offense**

In January 2021, Mr. Gordon traveled with a friend to attend the Trump rally. They traveled to D.C. on January 5 from Louisiana driving overnight, and went directly to the rally on the mall. He posted video from his car on the way to the rally, but the video was entirely innocuous, commenting on the traffic and the cars that appeared to be Trump supporters heading the same way. He said nothing to suggest he was intending any violence. Indeed, on January 4, 2021, he posted that "violence must be abhorred not embraced." Nor did he come prepared to engage in any violence. He had no weapons with him although he did have goggles and a bandana which he put on when he encountered tear gas.

Upon their arrival sometime the morning of January 6, they parked and walked from the Jefferson Memorial area to the Washington Monument where he recalls listening to Eric Trump,

Lin Wood, Rudy Guiliani and Donald Trump speaking on the JumboTron. They listened to the speeches and then when people headed toward the Capitol they followed. The decision to enter the building was not premeditated – when he approached the building and observed others entering he simply did the same. He entered through an open door. He knew he was not entitled to do so – it was obvious from the tear gas that he encountered that he was somewhere he shouldn't be, and for that he is regretful.

Shortly after his participation in the events of January 6, Mr. Gordon gave an interview to the local media in which he acknowledged his actions. He did not hide out or try to minimize his actions. He acknowledged his wrongdoing, indeed calling it a felony which it was not, but wanted people to know that he had not committed any violent acts or destroyed any property or stolen any items. This was his first confession to the crime he committed. The second was just a few days later when the FBI came to visit. He was interviewed by the FBI on January 14, 2021 while he was sitting on the front porch of his sister's home where he resided. He admitted being inside the Capitol and fully answered their questions. He acknowledged having encountered tear gas on his way into the building. He noted that he was in the rotunda for almost the entire time he was in the building. He opened his phone and showed the officers the photos he took that day. He acknowledged he observed people shoving police officers that day but stated unequivocally that he does not and did not condone violence in any way. He stated then and believes now that nonviolent protest is the only way to make yourself heard – he would never vandalize property or engage in violent acts. He said then and remains of the view that it is important for normalcy and decent dialogue to return to the American conversation. Upon his arrest he provided the agents the passcode to unlock his cell phone so they could continue to review any photos he had taken

that day. Upon his presentment he waived his preliminary hearing and was released on pretrial supervision, which he has complied with completely.

**A Sentence of Probation would be Appropriate in this Case**

Congress requires federal courts to impose the least restrictive sentence necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).  In this case, a term of probation would meet all of the pertinent purposes of sentencing and would be appropriate given Mr. Gordon's history and characteristics and his role in the offense.

Notably, Mr. Gordon did not engage in any violence or destruction of property.  The government will likely suggest that that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, he would have been  charged with felony offenses. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive and/or aggressive behavior. Without addressing all of the cases where sentences have been imposed, Counsel would point the Court to a few examples:  *United States v. Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after

resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history but shouted at police while entering building); *United States v. Jordan Hernandez*, 21-CR-272 (TJK) (court imposed two months' home detention despite Hernandez shouting at police and scaling wall to gain access to Capitol). Mr. Gordon did not engage in this type of behavior and thus probation would be appropriate.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation.  In this case, there is no need for incapacitation, specific deterrence or rehabilitation.  Mr. Gordon's likelihood of recidivism is very low.  He has accepted responsibility for his actions and has been a role model on pretrial release for over two years. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

General deterrence has also been served in these cases by the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge in full view of the world. The rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. There is no doubt that general deterrence has been served for those who would be deterred.  Moreover, the public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved.  Those who would not be deterred by these consequences are likely not capable of being deterred.  A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.

Mr. Gordon did not destroy property, steal property, commit violent acts, or encourage others to do so.  He did not engage in pre-planning or coordination activities.  He brought no weapons or even defensive gear other than goggles with him. While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way as Mr. Gordon has done.  This has a deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions. It is also important to note that after his arrest in this case, Mr. Gordon has taken no actions to suggest he would ever engage in this type of conduct again. He has not participated in rallies, has not continued to post about or espouse theories about the election being stolen, and has not engaged in any criminal behavior.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes.  However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity.  In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case.  Sentences imposed in these cases vary from very short terms of probation to periods of incarceration, and everything in between. While Mr. Gordon's conduct was serious, probation remains an appropriate resolution as it is well within the guidelines and would not result in disparity.  *See e.g., U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN) (36 months' probation); *United States v. Jackson Kostolsky*, 21-cr-197 (DLF) (36 months' probation with home confinement); *U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (12 months' probation);

*United States v. Gary Edwards*, 1:21-CR-366 (JEB) (12 months' probation); *U.S. v. Jordan Hernandez*, 21-CR-272 (TJK), (24 months' probation); *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (probation imposed as requested by government); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement imposed with lesser terms of home confinement than requested by government); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement imposed); *United States v. Danielle Doyle,* Crim. No. 21-00234 (TNM) (2 months probation with fine imposed); *United States v. Valerie Ehrke*, 21-cr-97 (PLF) (probation imposed as requested by government);  *United States v. Eliel Rosa*, Crim. No. 21-068 (TNM) (12 months probation); *United States v. Jacob Hiles*, Crim. No. 21-155 (ABJ)(2 years probation); *United States v. Sean Cordon*, Crim. No. 21-269 (TNM) (2 months probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(3 years probation); *United States v. Andrew Wigley*, Crim. No. 21-042 (ABJ)(18 months probation); *United States v. Andrew Hatley*, Crim. No. 21-098 (TFH) (3 years probation); *United States v. Rachael Pert*, Crim. No. 21-139 (TNM)(2 years probation); *United States v. Jeffrey Witcher*, Crim. No. 21-235 (RC)(12 months probation); *United States v. Brandon Nelson and Abram Markofski*, Crim. No. 21-344 (JDB) (2 years probation); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55 (RBW) (Probation with community service and fine); *United States v. Eliel Rosa*, 21-68 (TNM) (12 months probation with community service); *United States v. Thomas Gallagher*, 21-Cr-41 (24 months probation).

Indeed, Counsel has reviewed a recent chart the government filed showing sentences to date as of February 7, 2023 in the January 6 cases and since the beginning of February 2023, there have been 259 cases where defendants have been sentenced on the petty misdemeanor offenses under 40 USC 5104 as Mr. Gordan will be. Of those 259 cases, 150 (over half) received

no term of incarceration. Of the 150 individuals who received no term of incarceration, 81 received straight probation or a fine, while 69 received a period of home detention. For the individuals who received no incarceration, the number of days of home detention ranged from zero days to 120 days, with the mode and median being zero days and the mean being 27 days of home detention. A sentence of incarceration is not warranted -- looking at all 259 cases sentenced under 40 USC 5104, the mode of days in custody is zero, the median is zero, and the mean is 15.29 days. This figure is of course skewed by sentences where individuals acted far worse than Mr. Gordon.

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Mr. Gordon places his trust in this Court to do just that.

Respectfully submitted,

A.  J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
MICHELLE PETERSON
Chief Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004

.